**Dean L. JOHNSON, D.C., and Cindy R. Martens, Ph.D., C.N., C.R.A., Appellants (Defendants),**

v.

**The STATE of Wyoming ex rel. WYOMING BOARD OF MEDICINE, Appellee (Plaintiff).**

No. 98–353.

Supreme Court of Wyoming.

July 27, 1999.

Representing Appellants: Tom C. Toner of Yonkee & Toner, Sheridan, Wyoming.

Representing Appellee: Don W. Riske, Special Assistant Attorney General, Cheyenne, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, JJ., and JOHN D. TROUGHTON, D.J., and DAN R. SPANGLER, D.J. (RET.)

SPANGLER, District Judge (Retired).

Summary judgment was granted in favor of the appellee, which enjoined the appellants from practicing medicine in Wyoming and enjoined Appellant Dean L. Johnson, D.C., from using the term "chiropractic physician."

We reverse and remand.

## ISSUES

The appellants present these issues:

1. When a school district's throat culture policy does not require a strep throat to be treated by antibiotics or by a medical doctor, are a mother and a grandfather guilty of the unauthorized practice of medicine when they treat a family member using a nutritional supplement and tell the school district that the family member has been so treated in order to secure the family member's readmission to school?

2. Is a licensed Wyoming chiropractor guilty of the unauthorized practice of medicine if he treats a person for a possible viral or strep condition using clinical nutritional methods?

3. Do Wyoming statutes prohibit a licensed Wyoming chiropractor from using the term "chiropractic physician"?

4. If Wyoming statutes prohibit a licensed Wyoming chiropractor from using the term "chiropractic physician," are the statutes constitutional?

The appellee phrases the issue as follows:

Whether the district court erred in granting Appellee's motion for summary judgment[.]

## FACTS

Kevin Martens was nine years old and attending school in Crook County. On January 26, 1998, his mother, Appellant Cindy R. Martens, received a call from the school nurse, who said that Kevin was not feeling well and had a fever. Cindy picked up Kevin at the school and took him home. On January 28th, Cindy received a call from the school nurse, who reported that Kevin's throat culture was positive for strep.

Cindy talked to her father and Kevin's grandfather, Appellant Dean L. Johnson, who is licensed to practice chiropractic in Wyoming. Dean recommended that Cindy give Kevin immuplex and congaplex, natural food supplements for which a prescription is not required.

The school district's throat culture program contained these provisions:

In order to implement a throat culture program, the following procedures and regulations apply:

1. Throat cultures may be given only to those students demonstrating illness or infection.

2. If a student receives a positive throat culture, the student, the parent, the teacher and respective administrator will be notified. The student may not reenter school until treatment has been secured or a negative culture is demonstrated.

3. Students with positive cultures may be re-cultured in 14 days at parental request or if symptoms exist in the judgment of the nurse or teacher. If positive again, the above procedure will be followed. When a repeat positive occurs, all immediate family members shall be encouraged to come to the school for a throat culture. Siblings in school will be cultured.

4. Cost of the throat culture program will be assumed by the district.

Adopted: October 17, 1985

When Kevin returned to school, Cindy sent a note with him which contained the signatures of Cindy and Dean and was written on Dean's instruction pad having this heading: "Dean L. Johnson, D.C.—Chiropractic Physician." The note stated: "Please excuse Kevin from school 1/23/98–1/29/98, due to a viral strep syndrome. He has been treated by me for this." Cindy also sent a letter written on Dean's letterhead and signed by her, stating in part: "I have enclosed copies of the prescribed therapeutic supplements routinely used for this viral syndrome which constitutes treatment."

## STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues as to any material fact and the prevailing party is entitled to a judgment as a matter of law. *Davis v. Black Hills Trucking, Inc.*, 929 P.2d 532, 533–34 (Wyo.1996). No deference is given to the district court's decision. *State Board of Control v. Johnson Ranches, Inc. (Matter of North Laramie Land Company)*, 605 P.2d 367, 373 (Wyo.1980).

## DISCUSSION

### A. Family Remedy Exemption

■ Wyo. Stat. Ann. § 33–26–103(a)(vii) (LEXIS 1999) of Wyoming's Medical Practice Act—Wyo. Stat. Ann. §§ 33–26–101 to –511 (LEXIS 1999)—provides as follows:

(a) This chapter does not apply to:

. . .

(vii) The gratuitous domestic administration of family remedies[.]

The appellants and the appellee agree that the giving of nutritional supplements by the mother and grandfather is protected by the family remedy exemption. However, the appellee contends that, when the appellants wrote the note and letter to the school, this took them outside the family remedy exemption and constituted the practice of medicine.

The appellee's theory would be an unrealistic impediment to the use of the family remedy exemption. The purpose of the exemption would be frustrated if family members were allowed to do no more than give remedies to the child. In cases such as this one, it is essential that the family report the treatment to the school so that the child can be readmitted. Basically, the appellants did no more than tell the school the truth—that Kevin had been given nutritional supplements. It does not constitute the practice of medicine for family members to report the gratuitous administration of family remedies.

■ The appellee also contends that the appellants were wrong in using the term "viral strep syndrome" and in treating streptococcus infection with therapeutic supplements. However, these points are not at issue in this case. This is not a malpractice suit. The statute does not condition the family remedy exemption upon whether the diagnosis and treatment are correct.

## B. Licensed Chiropractor Exemption

■ The appellee contends that Dean violated the Medical Practice Act by "practicing medicine" as defined in § 33–26–102(a)(xi)(B):

(xi) "Practicing medicine" means any person who in any manner:

. . .

(B) Prescribes or provides medical diagnosis or medical treatment for human disease, injury, deformity, ailment, pregnancy or delivery of infants; . . .

The appellants and the appellee agree that a licensed chiropractor is exempt from the Medical Practice Act when he is practicing "chiropractic" as defined by Wyo. Stat. Ann. § 33–10–101 (LEXIS 1999):

Chiropractic is the system of specific adjustment or manipulation of the joints and tissues of the body and the treatment of the human body by the application of manipulative, manual, mechanical, physiotherapeutic or clinical nutritional methods for which those persons licensed under this chapter are trained and may include the use of diagnostic x-rays. A chiropractor may examine, diagnose and treat patients provided, however, chiropractors shall not perform surgery, direct the use of or administer drugs required by law to be dispensed on prescription only, practice obstetrics or prescribe or administer x-ray therapy.

The appellee argues that a chiropractor is not allowed to diagnose and treat a disease by applying clinical nutritional methods. Section 33–10–101 specifically allows a chiropractor to diagnose and treat patients by applying clinical nutritional methods. The language is clear. There is no ambiguity. To say that a chiropractor can diagnose and treat patients by applying clinical nutritional methods but not for diseases would defeat the purpose of the statute. That would limit the chiropractor's use of clinical nutrition for healthy patients who do not need treatment or to patients who have problems with joints or tissues. The statute does not contain these limitations. The statute says that a chiropractor can treat "the human body," not just the joints and tissues. To accept the appellee's contention, we would need to amend the statute, which we cannot do.

■ Section 33–10–101 enumerates the things which chiropractors are not allowed to do. They cannot perform surgery, direct the use of or administer prescription drugs, practice obstetrics, or prescribe or administer x-ray therapy. Diagnosis and treatment of disease by applying clinical nutritional methods is not among the prohibitions. Therefore, we hold that a chiropractor licensed to practice in Wyoming does not violate the Medical Practice Act by diagnosing a disease and by then treating the patient by the application of clinical nutritional methods.

## C. Use of the Term "Chiropractic Physician"

■ The appellee claims that, by using the term "chiropractic physician," Dean violated

§ 33–26–102(a)(xi)(C) of the Medical Practice Act, which includes in the definition of practicing medicine any person who "[a]ttaches the title of M.D., D.O., physician, surgeon, osteopathic physician or osteopathic surgeon, doctor, or any other words, letters or abbreviations which represent the person as being engaged in the practice of medicine."

■ The statute is clear as to what is prohibited. It does not prohibit the use of the term "chiropractic physician." That term does not represent that the person is engaged in the practice of medicine. We hold that a chiropractor licensed to practice in Wyoming does not violate the Medical Practice Act by using the reference "chiropractic physician."

In light of our holding that the statute was not violated, it is not necessary for us to discuss the issue of whether the statute violates a constitutional right.

## CONCLUSION

There is no factual dispute. The appellants are entitled to a judgment as a matter of law. Their gratuitous domestic administration of family remedies and reporting of that treatment to the school are exempt from the Medical Practice Act. Dean, as a chiropractor licensed in Wyoming, did not violate the Medical Practice Act by diagnosing a disease and providing treatment by the application of clinical nutritional methods. He did not violate the Medical Practice Act by referring to himself as a "chiropractic physician." The district court's order granting summary judgment and a permanent injunction is reversed, and the case is remanded for entry of a judgment in favor of the appellants.